IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AMBROSIA INDY LLC D/B/A
AMBROSIA RESTAURANT, individually
and on behalf of all others similarly
situated,

Case No.

      Plaintiff,

**JURY TRIAL DEMANDED**

  v.

SOCIETY INSURANCE, A MUTUAL
COMPANY,

      Defendant.

---

## CLASS ACTION COMPLAINT

Plaintiff Ambrosia Indy LLC, d/b/a Ambrosia Restaurant ("Ambrosia"), individually and on behalf of all others similarly situated, files suit against Society Insurance, A Mutual Company ("Society Insurance") and alleges as follows.

### INTRODUCTION

1. Since March 16, 2020, Indiana Governor Eric J. Holcomb has issued a series of Executive Orders ("Closure Orders") instructing all 6.7 million Indiana residents to remain at home, with certain exceptions. Though lifesaving, this mandate, which remains partially in place, prohibits dine-in service at Indiana restaurants. This prohibition is not merely causing severe financial distress for restaurateurs and their employees; such closures threaten the viability of Indiana's restaurant industry.

2. Plaintiff's restaurant Ambrosia in Indianapolis is among the thousands of restaurants that have been forced by the presence of coronavirus in the community and State

orders to cease operations as part of the Closure Orders. Ambrosia and many Indiana restaurants—none of which bear fault for statewide closures—were responsible business stewards, thus paying for business interruption insurance to protect against a situation like this.

3. But insurance companies operating in Indiana—despite collecting premiums for such risks—are categorically denying claims from restaurants arising from the presence of the virus or Indiana's mandated interruption of business services. Those denials are often made with little or no investigation and without due regard for the interests of insureds.

4. Indeed, form letters denying coverage for such losses appear to rest on crabbed readings of coverage language. That gets insurance law exactly backwards—and raises the specter of bad-faith denials.

5. Ambrosia's experience is no different. Ambrosia has dutifully followed Indiana's mandates, issued to stem the spread of coronavirus in the community. Facing serious financial harm, it has filed a claim with Society Insurance for business interruption coverage.

6. Society Insurance swiftly denied the claim. Though its reasons are cursory, the denial appears to be based on an unreasonable reading of its policy, which tracks form policies issued throughout Indiana on a take-it-or-leave-it basis.

7. That leaves Ambrosia in financial straits—precisely the situation it sought to avoid when it obtained coverage for business interruptions.

8. Ambrosia and other restaurants bought full-spectrum, comprehensive insurance for their *businesses* – not just for tangible damage to their premises and equipment. And for good reason. Business interruptions are a particular concern of the restaurant industry. Insurance coverage is important, if not vital, because profit margins in the restaurant industry are slim and reserve funds tend to be low.

9. Ambrosia and other Indiana restaurants reasonably believed they had comprehensive coverage that would apply to business interruptions under circumstances like these, where they have done everything right to protect their businesses and the public. But insurance companies like Society Insurance are cutting those lifelines – despite having pocketed significant premiums for their policies.

10. Plaintiff thus brings this action, on behalf of itself and other Indiana restaurants similarly situated, seeking declaratory relief, insurance coverage owed under Society Insurance's comprehensive business owners' policies, and damages.

## PARTIES

11. Plaintiff Ambrosia Indy LLC, d/b/a Ambrosia Restaurant is a limited liability company formed under the laws of Indiana. Its principal place of business is in Indianapolis, Indiana.

12. Defendant Society Insurance, A Mutual Company is a corporation organized under laws of Wisconsin with its principal place of business in Fond du Lac, Wisconsin. At all relevant times, Society Insurance operated in Indiana.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a different state than Defendant.

14. This Court has personal jurisdiction over Defendant, because Defendant is a resident of Wisconsin.

15. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) as the Defendant resides in the Eastern District of Wisconsin.

## FACTUAL BACKGROUND

16. In January 2020 early media reports documented an outbreak of a novel strain of coronavirus – COVID-19 – in Wuhan, China. By late January, it was generally understood in the scientific and public health communities that COVID-19 was spreading through human-to-human transmission and could be transmitted by asymptomatic carriers.

17. On January 30, 2020, reports of the spread of COVID-19 outside China prompted the World Health Organization to declare the COVID-19 outbreak a "Public Health Emergency of International Concern."

18. On March 11, the World Health Organization declared COVID-19 a global health pandemic based on existing and projected infection and death rates, as well as concerns about the speed of transmission and ultimate reach of this virus.

19. Public health officials have recognized for decades that non-pharmaceutical interventions (NPIs) can slow and stop the transmission of certain diseases. Among these are screening and testing of potentially infected persons; contact tracing and quarantining infected persons; personal protection and prevention; and social distancing. Social distancing is the maintenance of physical space between people. Social distancing can be limited – *e.g.*, reducing certain types of conduct or activities like hand-shaking – or large-scale – *e.g.*, restricting the movements of the total population.

20. A lack of central planning, shortages of key medical supplies and equipment, and the unfortunate spread of misinformation and disinformation about the risks of COVID-19 has led to widespread confusion, unrest, and uncertainty regarding the likely trajectory of this

pandemic and the appropriate counter-measures necessary to mitigate the damage it could potentially cause.

21. Beginning in late February, public health officials began advising various governments around the world that one of the most disruptive NPIs – population-wide social distancing – was needed to stop the transmission of COVID-19. Suddenly densely occupied spaces, heavily traveled spaces, and frequently visited spaces such as schools, offices, public transit, restaurants, and shops were likely to become hot-spots for local transmission of COVID-19.

22. By March, that advice was being implemented by state and local governments across the United States. On March 6, 2020, Indiana's Governor Holcomb issued Executive Order 20-02, declaring a public health emergency in the state of Indiana as a result of COVID-19 and making Indiana one of the first midwestern states to order widespread closures.

23. On March 16, 2020, Governor Eric J. Holcomb, issued Executive Order 20-04, the first of many statewide Closure Orders mandating that "restaurants, bars, nightclubs, and other establishments that provide in-dining services [were] required to close to in-person patrons."

24. On March 23, 2020, Governor Holcomb issued a statewide directive for "Hoosiers to Stay at Home," stating the intent to "ensure that the maximum number of people self-isolate in their homes or residences to the maximum extent feasible, while also enabling essential services to continue, in order to slow the spread of COVID-19 to the greatest extent possible."

25. On May 1, 2020, Governor Holcomb issued Executive Order 20-26, "Roadmap to Reopen Indiana for Hoosiers, Businesses and State Government," also known as "Back on Track

Indiana." Among other things, the Order mandates that restaurants will open gradually through phases, and dining room service will only be permitted to operate at 50% capacity until at least June 14, 2020. Indiana's restaurants will not be permitted to fully reopen until at least July 4, 2020.

<u>**PLAINTIFF'S EXPERIENCE**</u>

26. Plaintiff operates a restaurant and bar called Ambrosia in the historic Meridian Kessler neighborhood in Indianapolis. Ambrosia is a 40-year-old, family-owned restaurant that serves traditional Italian cuisine in an intimate setting. Ambrosia has earned a reputation in Indianapolis for its classic Italian family recipes, elegance, and hospitality.

27. Ambrosia has complied with all applicable Closure Orders of Indiana state and local authorities. Compliance with those Closure Orders, and the presence of the virus in the community, has caused direct physical loss of Ambrosia's insured property in that the restaurant and its equipment, furnishings and other business personal property, has been made unavailable, inoperable, useless and/or uninhabitable; and its functionality has been severely reduced if not completely or nearly eliminated.

28. The impact of these Closure Orders and the presence of the virus is felt not simply in their direct application to Ambrosia's operations, but also in the damage caused to neighboring businesses and properties.

29. Even though Indiana has begun to relax its mandates, Ambrosia will encounter continued loss of business income due to the presence of the virus and the Closure Orders because, in issuing those orders, government officials have stated that densely occupied public spaces are dangerously unsafe, and continuing to operate the restaurant might expose Ambrosia to the risk of contaminated premises as well as exposing customers and workers to heightened

transmission and infection risks.

30. Plaintiff purchased comprehensive business owners' liability and property insurance from Society Insurance for the policy period of January 24, 2020 to January 24, 2021 to insure against risks the business might face. Such coverage includes business income with extra expense coverage for the loss, as well as additional "civil authority" coverage. Once triggered, the policy pays actual losses sustained for the business income and extra expense coverage.

31. To date, Plaintiff has paid all of the premiums required by Society Insurance to keep its policy in full force.

32. On or about March 20, 2020 Plaintiff reported a loss of business income under its policy.

33. On or about March 21, 2020, Society Insurance denied Plaintiff's claim for coverage. In a cursory denial letter, Society Insurance took the position that a "slowdown in business due to the public's fear of the coronavirus or a suspension of business because a governmental authority (i.e. the governor or mayor) has ordered or recommended all or certain types of businesses to close is not a direct physical loss. In addition, the actual or alleged presence of the coronavirus is not a Covered Cause of Loss." Society offered no written explanation of the factual or legal basis for these conclusions. Society Insurance did not identify any exclusions from coverage. Only twenty-four hours elapsed between the Plaintiff's report of a loss and Society Insurance's issued a letter denying coverage.

34. Society Insurance's denial letter, on information and belief, appears to be a form letter sent in response to any restaurant with comprehensive business insurance that files a claim arising from Indiana's Closure Orders, and was issued without any investigation by Society

Insurance within one day of the filing of Plaintiff's claim.

35. Business insurance policies purchased by small businesses like restaurants are not individually negotiated. At most, the prospective policyholder may elect to add specialized coverage options to a basic business insurance policy form. But the substantive terms are set unilaterally by the insurer.

36. Plaintiff's policy includes common terms and phrases widely used by the insurance industry. The insurance industry typically hews closely to standardized insurance policy forms in addressing property and liability risks, and Society Insurance did so here.

37. Society Insurance's denial is contrary to the terms and conditions of the policy and applicable law, which gives effect to plain language, construes coverage agreements broadly, narrowly construes exclusions, and construes ambiguity in favor of coverage.

38. Society Insurance's denial of coverage breached its obligation and responsibility to provide coverage available through the policy to Plaintiff due to its covered loss of business income because it has suffered direct physical loss of its insured real and business personal property.

39. As a result of Society Insurance's denial of coverage and breach of the insurance policy it issued, Plaintiff has suffered and will continue to suffer damages due to Society Insurance's wrongful denial of vital property and business income coverage, which Plaintiff acquired to ensure the survival of its business in these circumstances.

## CLASS ALLEGATIONS

40. Pursuant to the Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff brings this action on behalf of itself and the following proposed Class (the "Class"):

> All restaurants in Indiana that purchased comprehensive business
> insurance coverage from Defendant Society Insurance which

includes coverage for business interruption, filed a claim for lost business income following Indiana's Closure Orders, and were denied coverage by Society Insurance.

41. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

42. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

43. This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

44. Although the precise number of members of the Class is unknown and can only be determined through appropriate discovery, on information and belief, the members of the proposed Class are so numerous that joinder of all members would be impracticable. There are tens of thousands of restaurants in Indiana which are governed by the Closure Orders and attendant statewide dine-in restrictions, and public reporting reveals that many have filed claims with Society Insurance but have been denied coverage.

45. The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on Society Insurance's conduct. The predominant questions of law and fact in this litigation include, but are not limited to:

    a. Whether Defendant's comprehensive business insurance policies cover

claims for lost business income under the circumstances present here;

b. Whether Defendant violates the terms of its standard business insurance policies by denying claims for lost business income as described herein;

c. Whether Defendant breached the implied covenant of good faith and fair dealing in its handling of its insureds' claims for lost business income;

d. Whether Defendant acted in bad faith in denying claims for lost business income without investigation or due consideration of those claims;

e. Whether the declaratory judgment sought is appropriate; and

f. The proper measure of damages.

46. These questions predominate over any questions affecting only individual Class members. This is particularly true because, on information and belief, the terms of the Society Insurance's business insurance policies are identical or substantively identical and Society Insurance has acted uniformly with respect to such policies.

47. The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class as the claims arise under Society Insurance's standard business insurance policies, challenge Society Insurance's standard course of conduct under those policies, and seek common relief therefor.

48. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as its interests coincide with, and are not antagonistic to, the other members of the Class. Plaintiff has retained counsel competent and experienced in consumer protection, insurance coverage, and class-action litigation.

49. A class action is superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it

would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery. Moreover, a class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

50. Defendant has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

51. Likewise, particular issues are appropriate for certification under Fed. R. Civ. P. 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether the comprehensive business insurance policies issued by Defendant cover Class members' direct physical loss of property and lost business income following the presence of coronavirus and Indiana's Closure Orders;

    b. Whether the coverages for direct physical loss of property and lost business income provided by the comprehensive business insurance policies are precluded by exclusions or other limitations in those policies;

    c. Whether Defendant breached contracts by denying comprehensive business insurance coverage to Plaintiff and Class members;

    d. Whether Defendant's summary denial of claims for direct physical loss of

property and lost business income, without any investigation or inquiry, constitutes bad faith and therefore a breach of the implied covenant of good faith and fair dealing to act in good faith and with reasonable efforts to perform its contractual duties and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts;

e. Whether Society Insurance's handling of claims for direct physical loss of property and lost business income associated with the presence of coronavirus and public health measures such as Indiana's Closure Orders constitutes a breach of the implied covenant of good faith and fair dealing; and

f. Whether Plaintiff and Class members are entitled to actual damages and/or injunctive relief as a result of Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION
### Declaratory Judgment

52. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

53. Plaintiff purchased a comprehensive business insurance policy from Defendant.

54. Plaintiff paid all premiums required to maintain its comprehensive business insurance policy in full force.

55. The comprehensive business insurance policy includes provisions that provide coverage for the direct physical loss of or damage to the premises as well as actual loss of business income and extra expenses sustained during the suspension of operations as a result of such loss or damage.

56. On or about March 16, 2020, Indiana Governor Holcomb issued Executive Order 20-04, mandating restaurants, including those owned by Plaintiffs and Class members, to cease

all dine-in services. This mandate also applied to neighboring businesses, thus causing widespread closures surrounding Plaintiff's business premises and those of the Class.

57. As the direct result of this mandate and the related Closure Orders, and the presence of coronavirus in the community, Plaintiff and Class members have suffered direct physical loss of their insured property within the meaning of Society's policy, resulting in substantial loss of business income.

58. These losses are insured losses under several provisions of Society Insurance's comprehensive business insurance policy including business income and extra expense coverage, and coverage for actions of civil authority.

59. There are no applicable, enforceable exclusions or definitions in the insurance policies that preclude coverage for these losses.

60. Plaintiff seeks a declaration for itself and the Class that their business income losses are covered and not precluded by exclusions or other limitations in Society Insurance's comprehensive business insurance policy.

**SECOND CAUSE OF ACTION**
**Breach of Contract**

61. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

62. Plaintiff and Class members purchased comprehensive business insurance policies from Defendant to ensure against all risks (unless specifically excluded) a business might face. These policies were binding contracts that afforded Plaintiff and Class members comprehensive business insurance under the terms and conditions of the policies.

63. Plaintiff and Class members met all or substantially all of their contractual obligations, including paying all the premiums required by Defendant.

64. On or about March 16, 2020, Indiana Governor Holcomb issued Executive Order

20-04, mandating restaurants, including those owned by Plaintiffs and Class members, to cease all dine-in services. This mandate also applied to neighboring businesses, thus causing widespread closures surrounding Plaintiff's business premises and those of the Class.

65. Beginning on March 16, 2020 and continuing through the date of the filing of this Complaint, Plaintiff and Class members suffered the direct physical loss of property and lost business income as the direct result of Indiana's Closure Orders and the presence of coronavirus in the community—losses which are covered under the comprehensive business insurance policies purchased from Defendant.

66. There are no applicable, enforceable exclusions in Plaintiff's and Class members' comprehensive business insurance policies that preclude coverage.

67. Defendant breached its contracts by denying comprehensive business insurance coverage to Plaintiff and Class members as described herein.

68. As a direct and proximate result of Defendant's denial of comprehensive business insurance coverage to Plaintiff and Class members, Plaintiff and Class members suffered damages.

. **THIRD CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

69. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

70. Plaintiff and Class members contracted with Defendant to provide them with comprehensive business insurance to ensure against all risks (unless specifically excluded) a business might face.

71. Under the laws of the states where Society Insurance does business, including Indiana, good faith is an element of every contract between insurance companies and their insureds.

72. Society Insurance's contracts are subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These contracts thus include the covenants that Defendant would act fairly and in good faith in carrying out their contractual obligations to provide Plaintiff and Class members with comprehensive business insurance.

73. Plaintiff and covered Class members reported a loss of business income under their respective business insurance policies.

74. Defendant denied Plaintiff's and covered Class members' claims for insurance coverage.

75. Defendant did not have a reasonable basis for denying Plaintiff's and the covered Class members' claims for coverage.

76. Defendant did not properly investigate plaintiff's or the covered Class members' claims, nor were the results of Defendant's investigation subject to a reasonable evaluation and review.

77. Defendant was aware that there was no reasonable basis for denying plaintiff's or the covered Class members' claims for coverage.

78. Defendant displayed a reckless indifference to the facts or proofs submitted by plaintiff and the covered Class members' claim for coverage.

79. Defendant breached the implied covenant of good faith and fair dealing by:
   a. Selling policies that appear to provide liberal coverage for loss of property and lost business income with the intent of interpreting undefined or poorly

defined terms, undefined terms, and ambiguously written exclusions to deny coverage under circumstances foreseen by Defendant;

b. Denying coverage for loss of property and lost business income unreasonably, and without a rational basis in their policy and applicable law by applying undefined, ambiguous, and contradictory terms contrary to applicable rules of policy construction and the plain terms and purpose of the policy;

c. Denying Plaintiff and Class members' claims for loss of property and loss of business income without conducting a fair, unbiased, and thorough investigation or inquiry; and

d. Compelling Plaintiff and Class members to initiate this litigation to secure the policy benefits to which they are entitled.

80. Plaintiff and Class members met all or substantially all of their contractual obligations, including by paying all the premiums required by Defendant.

81. Defendant's failure to act in good faith in providing comprehensive business insurance coverage and exercising its discretion under its business insurance policies to Plaintiff and Class members denied Plaintiff and Class members the full benefit of their bargain.

82. Accordingly, Plaintiff and Class members have been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and are entitled to damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

Plaintiff, on behalf of itself and the Class, requests the following relief:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23,

Case 2:20-cv-00771-JPS    Filed 05/21/20    Page 16 of 19    Document 1

appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel.

b. A declaration that Plaintiff's and Class members' losses are covered under Defendant's comprehensive business insurance policies;

c. Actual damages in an amount according to proof;

d. Injunctive or declaratory relief;

e. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

f. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

g. Attorneys' fees for Society's bad faith, under the common fund doctrine, and all other applicable law; and

h. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues so triable.

Dated: May 21, 2020                     Respectfully submitted,

 /s/ Samuel J. Strauss
Samuel J. Strauss, SBN: 1113942
Austin Doan, SBN: 1107649
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile:  (608) 509-4423
sam@turkestrauss.com
austind@turkestrauss.com

Richard E. Shevitz
Lynn A. Toops
Amina A. Thomas
Lisa LaFornara
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
rshevitz@cohenandmalad.com
ltoops@cohenandmalad.com
athomas@cohenandmalad.com
llafornara@cohenandmalad.com

Eric H. Gibbs
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com

Andrew N. Friedman
Victoria S. Nugent
Julie Selesnick
Geoffrey Graber
Eric Kafka
Karina G. Puttieva
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
vnugent@cohenmilstein.com
jselesnick@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com
kputtieva@cohenmilstein.com

J. Gerard Stranch, IV
**BRANSTETTER, STRANCH**
**& JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com

*Attorneys for Plaintiff and Proposed Class*